Garrett V. HAYRE, Claimant–
Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Respondent–
Appellee.

No. 98–7046.

United States Court of Appeals,
Federal Circuit.

Aug. 16, 1999.

Linda E. Blauhut, Paralyzed Veterans of America, of Washington, DC, argued for

claimant-appellant. With her on the brief was Michael P. Horan.

Domenique Kirchner, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were David M. Cohen, Director, Kirk T. Manhardt, Assistant Director, and Luke Levasseur, Attorney. Of counsel on the brief were Richard J. Hipolit, Deputy Assistant General Counsel and Martie Adelman, Attorney, Department of Veterans Affairs, of Washington, DC.

Before NEWMAN, SCHALL, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

## DECISION

Garrett V. Hayre appeals from the decision of the United States Court of Appeals for Veterans Claims,[1] *Hayre v. Gober*, No. 95–984 (Mem. Decision Dec. 2, 1997) (hereinafter "Hayre Decision") affirming the decision by the Board of Veterans' Appeals ("Board") declining to reopen Mr. Hayre's claim on the basis of clear and unmistakable error ("CUE") due to a breach of the duty to assist. For the reasons set forth below, we affirm-in-part, vacate-in-part, and remand.

## BACKGROUND

Mr. Hayre served on active duty in the United States Marine Corps from June 1969 to October 1971. On September 29, 1972, he filed an application for disability compensation for a "nerve problem." On his application form, Mr. Hayre specifically noted that he had been treated while in service for "nerves" in June 1971 at Cherry Point, North Carolina, and that he had "talked to [a] psychiatrist" in October 1971 at Quonset Point, Rhode Island. On October 11, 1972, the Department of Veterans

Affairs (formerly the Veterans Administration) ("VA") Regional Office ("RO") sent a request for service medical records ("SMRs") to the National Personnel Records Center ("NPRC").

On November 15, 1972, the RO rejected Mr. Hayre's claim in a denial notice that explained: "[w]e do not find in your medical records or elsewhere any evidence of the existence of a nervous condition." The denial notice did not state that the RO had failed to obtain the requested records. Mr. Hayre did not appeal the RO decision. The RO denied requests to reopen Mr. Hayre's claim for service connection of an acquired psychiatric condition in April 1977, March 1979, and January 1982. Mr. Hayre did not appeal any of the above rating decisions to the Board.

On September 9, 1992, the RO in Columbia, South Carolina, received Mr. Hayre's application for disability compensation, which alleged service connection for post-traumatic stress disorder ("PTSD"). On November 7, 1992, Mr. Hayre underwent a VA examination for PTSD. He was diagnosed with chronic PTSD, dysthymia, and a personality disorder. On December 18, 1992, the RO awarded service connection and a 50% disability rating for PTSD.

In April 1993, Mr. Hayre's accredited representative filed a Statement in Support of Claim that the 1972 decision was "clearly erroneous" because the RO had not obtained the psychiatric SMRs that he had requested and had failed to afford him a VA examination. The representative therefore argued that an earlier effective date for the PTSD service connection was in order. The RO denied his claim for an earlier effective date because the available evidence obtained in 1972 did not demonstrate the reasonable probability of a valid claim to warrant a VA examination. The

1. On March 1, 1999 the name of the United States Court of Veterans Appeals was changed to the United States Court of Appeals for Veterans Claims pursuant to the enactment of the Veterans Programs Enhancement Act of 1998, Pub.L. No. 105–368, § 511, 112

Stat. 3315, 3341 (1998). We refer throughout this opinion to the court by its new name although at the time of the proceedings and decisions here reviewed, it was not yet so named.

RO did not respond to Mr. Hayre's argument regarding the failure to obtain the requested psychiatric SMRs.

In July 1993, Mr. Hayre's accredited representative filed an appeal to the Board and stated that the issue was "[w]hether the rating of [November 6, 1972] was clearly erroneous in the decision to deny the claimed nervous condition." The representative claimed that the 1972 rating action was erroneous because the RO had failed properly to assist Mr. Hayre in developing his claim. The Board found that Mr. Hayre's claim of CUE was not well-grounded because a breach of the duty to assist under 38 U.S.C. § 5107(a) cannot, as a matter of law, be CUE. *See Caffrey v. Brown*, 6 Vet.App. 377, 382–383 (1994) (holding that a breach of the duty to assist cannot constitute CUE because claimants cannot show that fulfillment of the duty to assist would have manifestly changed the outcome of the prior decision).

Mr. Hayre appealed the Board's decision to the Court of Appeals for Veterans Claims, which affirmed the Board's decision. The court held that Mr. Hayre "has not presented a well-grounded claim of CUE because he has not specified a factual or legal error in the 1972 rating decision that would have changed the outcome." Hayre Decision, slip op. at 3. The court also held that the RO's 1972 request for information satisfied "any obligation [the VA] had to assist the appellant." *Id.* (citing 38 C.F.R. § 3.159(b) ("When information sufficient to identify and locate necessary evidence is of record, [the VA] shall assist a claimant by requesting, directly from the source, existing evidence which is either in the custody of military authorities or maintained by another Federal agency")). The Court of Appeals for Veterans Claims therefore affirmed the Board's holding that Mr. Hayre's claim of CUE was not well-grounded in a Memorandum Decision dated December 2, 1997, which became final when the court denied a motion for reconsideration, *see Hayre v. Gober*, No. 95–984 (Judgment Dec. 29, 1997).

## DISCUSSION

### A. Standard of Review

Our review of decisions of the Court of Appeals for Veterans Claims is limited. Under 38 U.S.C. § 7292(c), we have the exclusive jurisdiction to "review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under [section 7292], and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c) (1994). We have the authority to decide all relevant questions of law and can set aside a regulation or an interpretation of a regulation relied upon by the Court of Appeals for Veterans Claims when we find it to be arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or without observance of procedure required by law. *See* 38 U.S.C. § 7292(d)(1) (1994). Except to the extent that an appeal presents a constitutional issue, we may not review a challenge to a factual determination or a challenge to a law or regulation as applied to the facts of a particular case. *See id.*

### Analysis

On appeal, Mr. Hayre asserts that he is entitled to an earlier effective date for service connection of his PTSD because he notified the RO in his 1972 application of the specific dates and VA medical facilities where he had been treated while in service for psychiatric problems. He contends that denial of his claim in 1972 was "clearly erroneous" because, when the RO rendered its decision, it had not obtained the psychiatric SMRs that he had requested and had failed to afford him a VA examination. Had the VA fulfilled its duty to assist him before adjudicating his claim, Mr. Hayre asserts, the record would have been complete and service connection accordingly granted at that time. Thus, Mr.

Hayre essentially argues that all determinations regarding service connection made after 1975 but before the December 18, 1992, decision were the product of "legal error of the sort that should be contemplated in the CUE analysis" because the decisions were based on a record that was incomplete due to a breach of the duty to assist.

The Secretary of the Department of Veterans Affairs ("Secretary") responds that the RO did not breach its duty to assist Mr. Hayre. In 1972, the RO sent a specific request, by date and place, for medical records to the NPRC. The Secretary agrees with the Court of Appeals for Veterans Claims that "this request for information satisfied any obligation the VA had to assist the appellant." Hayre Decision, slip op. at 3 (citation omitted).

■ That interpretation of the duty to assist is incorrect as a matter of law because a single request for pertinent SMRs specifically requested by the claimant and not obtained by the RO does not fulfill the duty to assist. Congressional mandate requires that the VA operate a unique system of processing and adjudicating claims for benefits that is both claimant friendly and non-adversarial. An integral part of this system is embodied in the VA's duty to assist the veteran in developing facts pertinent to his or her claim. *See Littke v. Derwinski*, 1 Vet.App. 90, 91 (1990). The cornerstone of the veterans' claims process is 38 U.S.C. § 5107(a), which was enacted in 1988 (formerly § 3007(a)) when it was added by the Veterans' Judicial Review Act, Pub.L. No. 100–687, § 103(a), 102 Stat. 4105, 4106 (1988) ("The Secretary shall assist such a claimant in developing the facts pertinent to the claim."). *See id.* In enacting 38 U.S.C. § 5107(a), Congress was codifying the VA's obligation to assist claimants, which had existed in 38 C.F.R. § 3.103(a) since July 18, 1972. *See* 38 C.F.R. § 3.103(a) (1987) ("It is the obli-

gation of [the VA] to assist a claimant in developing the facts pertinent to his [or her] claim....").

■ Once a claimant has submitted a well-grounded claim to the RO, the burden shifts to the Secretary to "assist the claimant in developing facts pertinent to the claim," 38 U.S.C. § 5107(a) (1994), and "to make *all possible efforts* to obtain and assess records relevant to an evaluation of the disability," *Schafrath v. Derwinski*, 1 Vet.App. 589, 594 (1991) (emphasis added). "A well[-]grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a)]." *Murphy v. Derwinski*, 1 Vet. App. 78, 81 (1990). Reasonable efforts by the VA to obtain records regarding medical history from other Federal departments or agencies are an important part of the VA's affirmative duties under 38 U.S.C. § 5107(a).[2] *See Thurber v. Brown,* 5 Vet.App. 119, 124–25 (1993) (citing *Murphy*, 1 Vet.App. at 82) (stating that duty to assist includes obtaining any relevant military, VA, or other government records, and with appellant's cooperation, private medical, hospital, employment, or other civilian records). The Court of Appeals for Veterans Claims has also held that the claimant does not always need to make a specific request that the VA procure pertinent private medical records. *See Ivey v. Derwinski,* 2 Vet.App. 320, 322–23 (1992). The duty to assist may arise when a claimant simply refers to the pertinent private medical examinations or treatments without making a specific request. *See id.*

The VA has substantively defined its obligation to obtain SMRs in its *VA Adjudication Procedure Manual M21–1.* The VA has recognized that the duty to assist is not satisfied where records are not obtained after one request and therefore re-

---

**2.** Under 38 U.S.C. § 5106, Federal departments or agencies must "provide such information to the Secretary as the Secretary may request for purposes of determining eligibility

for or amount of benefits, or verifying other information with respect thereto." 38 U.S.C. § 5106 (1994).

quires RO adjudicators to make a supplemental request. *See VA Adjudication Procedure Manual M21–1*, Part VI, ¶ 6.04(b) (1972) ("When partial records only are received and the missing records are required for adjudication of a case, a supplemental request rather than a follow[-]up should be prepared ... acknowledging the records received and specifying the additional records required"). Furthermore, "if the information received from the service department in reply to the *initial and supplemental* VA Forms [07]–3101 is insufficient to complete adjudication of the claim, a letter setting forth in detail the information or further evidence needed will be addressed [to the appropriate agency]." *Id.* at ¶ 6.04(1) (emphasis added). These requirements for obtaining records and evaluation of the complete medical history of the veteran's condition operate to protect a claimant against adverse decisions based on an incomplete, or inaccurate, record and to enable the VA to make a more precise evaluation of the level of the disability and of any changes in the condition.

 The duty to assist does not end upon the RO's submission of requests for records. Where the record does not adequately reveal the current state of a veteran's disability and the claim is well-grounded, fulfillment of the statutory duty to assist requires a thorough and contemporaneous medical examination. *See Shipwash v. Brown*, 8 Vet.App. 218, 222 (1995); *Lineberger v. Brown*, 5 Vet.App. 367, 369 (1993) (citing 38 C.F.R. § 3.326 (effective Aug. 6, 1971)). When a veteran's SMRs are unavailable, the VA's duty to assist and the Board's duty to provide reasons for its findings and conclusions are heightened, *see Milostan v. Brown*, 4 Vet.App. 250, 252 (1993), because "[t]he veteran's possession of [SMRs] is a decidedly abnormal situation. The veteran cannot reasonably be expected to have such records." Department of Veterans Benefits, Veterans Administration, DVB Circular 21–83–5, *Procedures for Claims Involving Delayed Receipt of Service Medical Records* (Mar. 18, 1983). The Court of Appeals for

Veterans Claims has interpreted the statutory duty to assist to require the VA either to "obtain the records before deciding the case or to explain[ ][the] failure to do so." *Schafrath*, 1 Vet.App. at 593. Consequently, inherent in the duty to assist is a requirement for the Secretary to notify the claimant if the VA is unable to obtain pertinent SMRs specifically requested by the veteran so that the claimant may know the basis for the denial of his or her claim; may independently attempt to obtain the SMRs; may submit alternative evidence and/or timely appeal. Indeed, the Court of Appeals for Veterans Claims has also held that the duty to assist requires the VA to notify the veteran of the existence of newly discovered SMRs and to assist him or her in recovering those records. *See Jolley v. Derwinski*, 1 Vet.App. 37, 39 (1990).

The interpretation of the duty to assist by the Court of Appeals for Veterans Claims in its decision is therefore incorrect as a matter of law. In light of the express definition of the duty to assist set forth in 38 U.S.C. § 5107(a), the VA regulations, and the case law of the Court of Appeals for Veterans Claims, we hold that a single request for pertinent SMRs specifically requested by the claimant and not obtained by the RO does not fulfill the duty to assist. Because this appeal presents a purely legal question—the proper interpretation of a statute in light of its underlying regulations and case law—we have jurisdiction to consider it under 38 U.S.C. 7292(d)(1). However, we express no view as to the application of law to fact in this case, that is, whether the duty to assist was breached in Mr. Hayre's case. Accordingly, we vacate the part of the decision relating to the breach of the duty to assist and remand that matter to the Court of Appeals for Veterans Claims to determine whether the RO breached its duty to assist as defined in 1972.

 If upon remand the Court of Appeals for Veterans Claims finds that a breach of the duty to assist occurred, then

such a breach is not an error of the sort that should be contemplated in the CUE analysis, as Mr. Hayre advocates. In order to establish a valid CUE claim, "the claimant must show that an outcome-determinative error occurred, that is, an error that would manifestly change the outcome of a prior decision." *Bustos v. West,* 179 F.3d 1378, 1381 (Fed.Cir.1999). The Court of Appeals for Veterans Claims held that Mr. Hayre did not present a well-grounded claim of CUE because he had not specified a factual or legal error in the 1972 rating decision that would have manifestly changed its outcome. We perceive no error in the legal analysis used by the Court of Appeals for Veterans Claims in resolving this issue because Mr. Hayre cannot prove that the missing SMRs would manifestly change the outcome of the 1972 rating decision. Consequently, we affirm the decision by the Court of Appeals for Veterans Claims holding that Mr. Hayre's claim of CUE was not well-grounded.[3]

 Furthermore, a breach of the duty to assist in this case would not be an error of the sort that should be contemplated in the CUE analysis because the original RO decision in 1972 is not final for purposes of appeal. A claim of CUE is a collateral attack that can only be made on a final RO or Board decision, *see id.* at 1380–81, and generally, rating decisions by the VA are deemed "final and binding ... as to conclusions based on the evidence on file at the time the VA issues written notification" of a decision, 38 C.F.R. § 3.104(a). In cases of grave procedural error, however, the Court of Appeals for Veterans Claims has consistently held that RO or Board decisions are not final for purposes of direct appeal. *See Tablazon v. Brown,* 8 Vet.App. 359, 361 (1995) (concluding that "where VA has failed to procedurally comply with statutorily mandated requirements, a claim does not become final for purposes of appeal to the [Court of Appeals for Veterans Claims]"); *Hauck v. Brown,* 6 Vet.App. 518, 519 (1994) (hold-

ing that where an appellant "never received notification of any denial ..., the one-year period within which to file an NOD, which commences with 'the date of mailing of notice of the result of initial review or determination,' did not begin to run"); *Kuo v. Derwinski,* 2 Vet.App. 662, 666 (1992) (stating that where an appellant and his representative had not properly been furnished with a Statement of the Case, the period in which to appeal the adjudicative determination in question never commenced to run and that determination was not final); *see also Ashley v. Derwinski,* 2 Vet.App. 307, 311 (1992) (holding that where the Board did not mail decision in accordance with the provisions of 38 U.S.C. § 7104(e), the period within which to appeal to the Court of Appeals for Veterans Claims did not commence to run). A breach of the duty to assist in which the VA failed to obtain pertinent SMRs specifically requested by the claimant and failed to provide the claimant with notice explaining the deficiency is a procedural error of, at least, comparable gravity that vitiates the finality of an RO decision for purposes of direct appeal. Whether this lack of notice is the product of inadvertence or design, it places the interests of the veteran, in this uniquely pro-claimant adjudicatory system, in considerable jeopardy in that it effectively extinguishes the claimant's right to judicial review.

Congress itself has recognized that lack of notice undermines the operation of the veterans' benefits system by altering its manifestly pro-claimant character and jeopardizing the veteran's ability to appeal in what may appear to be a fundamentally unfair manner. For example, when it passed the Veterans' Benefits Amendments of 1989, Congress emphasized the strongly and uniquely pro-claimant system of awarding benefits to veterans and acknowledged serious obstacles in the claimants' ability to appeal:

---

**3.** We further note that the recently enacted regulation, 38 C.F.R. § 20.1403, specifically provides that breach of the duty to assist does not constitute CUE. *See* 38 C.F.R. § 20.1403(d)(2) (1999).

In the Committee's view, the shortcomings found by [General Accounting Office] in [the] VA's processing of disability claims may seriously impede the furnishing of benefits to eligible veterans. *Denial notices that lack meaningful information on the rationale of the decisions and available procedural options are fundamentally unfair.* In an administrative system in which claimants are not represented by veterans' service organizations in 59.5 percent of the cases at the RO level and in 24.5 percent of the cases at the [Board] level and in which representation by attorneys is discouraged and infrequent, *claimants have a need to be apprised fully and clearly of their procedural rights and the reasons for the negative decisions regarding benefits to which they may be entitled. Lacking such information, claimants for VA benefits very likely are impaired in making well-informed choices on whether to accept or appeal a VA decision.*[4]

S.Rep. No. 101–126, at 294 (1989) (emphasis added), *reprinted* in 1989 U.S.C.C.A.N. 1469, 1703. This passage illustrates that in the veterans' uniquely claimant friendly system of awarding compensation, systemic justice and fundamental considerations of procedural fairness carry great significance. It emphasizes, moreover, that in contrast to other appellate proceedings, the infrequency of representation, especially early in the VA adjudicatory process, impairs the claimant's ability to ensure that a fair and procedurally correct decision on his or her claim for benefits will result. Notice to the claimant explaining the failure to obtain pertinent and specifically requested SMRs is therefore essential to insuring that the agency of original jurisdiction ("AOJ") will adequately develop a veteran's claim before deciding it on the merits. Furthermore, if the claimant is to appeal effectively his or her case, the claimant must be cognizant of all the evidence considered by the AOJ.

■ Where so much of the evidence in VA adjudications is circumstantial at best, notice explaining the failure to obtain pertinent and specifically requested SMRs is critical to ensuring a proper award for benefits and an effective right to judicial review. If a veteran, who is later able to obtain counsel or serendipitously discovers a breach of the duty to assist, has no remedy, then the duty to assist becomes a hollow obligation. In such a case, the veteran is trapped in an impossible situation, a Catch–22 in which judicial review is not available because the VA refuses to obtain the pertinent SMRs specifically requested by the claimant, and the Court of Appeals for Veterans Claims refuses to require it because the claimant cannot prove that the missing SMRs would manifestly change the outcome of his or her case. We therefore hold that where there is a breach of the duty to assist in which the VA failed to obtain pertinent SMRs specifically requested by the claimant and failed to provide the claimant with notice explaining the deficiency, the claim does not become final for purposes of appeal.

■ It is already well established by the Court of Appeals for Veterans Claims that breaches of the duty to assist on direct appeal require a remand to permit the AOJ the opportunity to make a reasonable attempt to fulfill the duty to assist, that is, to gather the relevant evidence and documents, to consider the governing statutes, regulations and case law and to perform a critical examination of the justification for the decision. *See Schafrath,* 1 Vet.App. at 596 (stating where Board failed to assist the appellant in obtaining requested VA medical records, the decision is normally vacated and the matter

---

4. In 1989, Congress enacted 38 U.S.C. § 5104(b) (formerly § 3004(b)), which was added by the Veterans' Benefits Amendments of 1989, Pub.L. No. 101–237, § 115, 103 Stat. 2062 (1989), to require RO decisions to specify the evidence considered and the reasons for their disposition. We note that we are not applying this statutory provision retroactively in this case.

remanded to the Board for further development of the record); *Moore v. Derwinski*, 1 Vet.App. 401, 406 (1991) (holding where Secretary breached the duty to assist veteran in ensuring examination report was as complete and thorough as possible, remand was required to enable the Board to assist claimant in developing the facts of his case); *Littke*, 1 Vet.App. at 90–91 (holding where VA breached its statutory duty to assist veteran in developing claim, remand was required to AOJ with instructions to assist the veteran by obtaining the medical records). According to the Court of Appeals for Veterans Claims, following the fulfillment of the duty to assist, the case is reviewed to determine whether the additional evidence, together with the evidence that was previously of record, supports the allowance of all benefits sought on appeal. *See Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) ("The [Court of Appeals for Veterans Claims] expects that the [Board] will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case."). "On remand, the [claimant] will be free to submit additional evidence and argument" on the remanded claim. *Quarles v. Derwinski*, 3 Vet.App. 129, 141 (1992). Thus, in this case, if the Court of Appeals for Veterans Claims finds that the RO breached the duty to assist in 1972, then the 1972 RO decision is not final for purposes of direct appeal. In such a case, the Court of Appeals for Veterans Claims would need to remand the case to permit the AOJ the opportunity to fulfill the duty to assist and to review the case to determine whether the additional evidence, together with the evidence that was previously of record, supports the allowance of benefits sought on appeal.

After carefully considering the remaining arguments of Mr. Hayre, we find them unpersuasive.

## CONCLUSION

For the foregoing reasons, the decision of the Court of Appeals for Veterans Claims is

*AFFIRMED–IN–PART, VACATED–IN–PART*, and the case is *REMANDED*.

## COSTS

Each party shall bear its own costs.