**THIS VERSION INCLUDES AN ERRATA DATED SEPTEMBER 20, 2000-e**

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 98-354

RICHARD D. SIMMONS, APPELLANT

V.

TOGO D. WEST, JR.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals
On Reconsideration

(Decided   August 30, 2000   )

*Mark R. Lippman*, of La Jolla, California, and Kenneth M. Carpenter of Topeka, Kansas, were on the pleadings for the appellant.

*Leigh A. Bradley,* General Counsel; *Ron Garvin*, Assistant General Counsel; *Thomas A. McLaughlin*, Special Assistant to the General Counsel; and *Cristine D. Senseman*, all of Washington, D.C., were on the pleadings for the appellee.

Before HOLDAWAY, STEINBERG, and GREENE, *Judges*.

STEINBERG, *Judge*: The appellant, veteran Richard D. Simmons, appeals through counsel a January 1998 Board of Veterans' Appeals (Board or BVA) decision that determined that an April 1977 decision by a Department of Veterans Affairs (VA) regional office (RO), that had denied VA service connection for arthritis and a nervous disorder, did not contain clear and unmistakable error (CUE).  Record (R.) at 3.  The appellant has filed a brief, and the Secretary has filed a motion for single-judge affirmance; both parties have filed supplemental memoranda pursuant to Court order. On May 1, 2000, the appellant filed, pursuant to Rule 28(g) of this Court's Rules of Practice and Procedure, a Notice of Supplementary Authority as to the Court's opinion in *Tetro v. West*, 13 Vet.App. 404 (2000).  This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C.

§§ 7252(a) and 7266(a). On May 12, 2000, the panel issued an opinion in this appeal that discussed in part the Court's opinion in *Tetro*, *supra*. On July 3, 2000, the appellant filed a motion for reconsideration of the panel's opinion in the instant case. In light of subsequent developments in *Tetro*, in which a motion for reconsideration is pending, the panel has decided, sua sponte, to revise its prior opinion, although the result remains the same. Accordingly, the appellant's motion for reconsideration will be denied as moot. For the reasons that follow, the Court will grant the Secretary's motion in part and deny it in part and affirm the Board decision.

## I. Relevant Background

The veteran served in the U.S. Navy from November 1968 to January 1970. R. at 14. His service medical records (SMRs) indicated that he had suffered from depression (R. at 23, 27) but contained no indication of in-service arthritis (*see* R. at 17-32). A February 1972 private hospitalization discharge report noted that the veteran had complained of "arthritis of large joints since 12/20/71"; he was diagnosed as having "[p]olyarthritis, probably rheumatoid, sero[-]negative". R. at 34.

In September 1972, he filed with the VARO an application for VA compensation or pension based on arthritis. R. at 38-42. He submitted a private medical record, dated September 1972, that described treatment on "December 20, 1971, [for] painful swelling . . . near the right sacro iliac [sic] joint". R. at 45. In November 1972, a VA examining physician diagnosed the veteran as having "[p]olyarthritis, cause undetermined". R. at 62. The RO in December 1972 awarded the veteran non-service-connected pension benefits for his arthritis, effective December 1971. R. at 67-68.

In June 1974, the veteran filed a claim for VA service connection for rheumatoid arthritis, and asserted that his arthritis was a "direct result of his mental depression in service". R. at 80. He submitted in July 1974, inter alia, an April 1974 private hospitalization summary, which diagnosed "[r]heumatoid arthritis, sero-negative". R. at 86. An August 1974 VA psychiatric examination report noted the veteran's account that he had "developed rheumatoid arthritis in December 1971" and diagnosed him as having "[a]nxiety reaction with depressive features, moderate only, secondary to arthritis condition". R. at 123. The RO in September 1974 denied the veteran's "reopened claim" because his arthritis and anxiety reaction "were not incurred in or aggravated by his period of

military [service,] nor [was] it shown that he had arthritis manifested within the first year following service." R. at 128-29.

In November 1974, the veteran submitted a letter from Dr. Herion, a private physician, stating:

> On the basis of information contained in [m]edical [r]ecords covering his illness while in the United States Navy from August 1968 to January 1970, it is reasonable to presume that his illness then, which appeared as mental depression, was the same as that presenting as polyarthritis when I saw him in February 1972. . . . The brief interval between his discharge from the military and the onset of his polyarthritis would, I believe, make it likely that Mr. Simmons['] chronic disease was present even while he was in the United States Navy.

R. at 149. In December 1974, the RO confirmed its earlier denial of service connection for arthritis; the RO concluded: "Dr. Herion's statement provides no basis to establish that rheumatoid arthritis developed during [the veteran's] active military service or within the year presumpti[on] period following separation from service." R. at 156.

In April 1977, the veteran submitted to the RO a private medical record from Dr. Ford, that contained a May 1970 diagnosis of "[a]rthritis (type undetermined) . . . [and n]ervous anxiety". R. at 182. Later that month, the RO confirmed its prior denial of both claims. R. at 184. The veteran did not appeal to the Board any of the above RO decisions. In May 1977, the RO notified the veteran of its decision in a letter that stated: "Dr. Ford's statement provides no basis to establish service connection for arthritis and nervous condition". *Ibid.*

In September 1994, the veteran filed a claim asserting CUE as to that April 1977 RO decision. R. at 316. It is unclear whether the RO had reopened the veteran's claims and then denied them on the merits or whether the RO had denied the veteran's attempt to reopen the previously disallowed claims. For the purposes of this decision, the Court will assume that the RO had reopened the veteran's claims and denied them on the merits because that result would be more favorable to the veteran and because, ultimately, the adjudication of the instant CUE claim would not be affected in any significant manner if the Court were to assume that the claim had not in fact been reopened. In July 1995, the veteran submitted a statement in which he alleged that in April 1977 he had been entitled to a presumption of service connection under 38 C.F.R. § 3.307(a)(3). R. at 339. In February 1995, the RO denied his CUE claim. R. at 346-48. The

veteran timely appealed to the Board. R. at 351, 359-60. In the January 1998 BVA decision here on appeal, the Board denied the veteran's claim for CUE in the April 1977 RO decision. R. at 3.

The appellant filed his brief in this case on January 28, 1999, and on April 29, 1999, the Secretary filed a motion for single-judge affirmance. On October 28, 1999, the Court ordered the parties to file supplemental memoranda as to the opinion of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Hayre v. West*, 188 F.3d 1327 (Fed. Cir. 1999). Such supplemental memoranda having been filed, the Court will now proceed to adjudicate this matter.

## II. Analysis

### A. CUE Claim

Preliminarily, the appellant's brief states: "Appellant abandons the CUE claim with respect to the nervous disorder". Appellant's Brief (Br.) at 2, n.2. Hence, he has abandoned that issue on appeal. *See Green (Doris) v. Brown*, 10 Vet.App. 111, 114 (1997).

An RO decision that has become final, as had the April 1977 RO decision, generally may not be reversed or amended in the absence of CUE. *See* 38 U.S.C. § 5109A (codifying into law VA regulation 38 C.F.R. § 3.105(a), *infra*); 38 C.F.R. § 3.105(a) (1999); *see also* 38 U.S.C. §§ 5108, 7105(c); *cf.* 38 U.S.C. § 5110(i) (when previously disallowed claim is reopened and allowed on basis of new and material evidence in form of service department records, effective date is date such disallowed claim was filed).

Section 3.105(a) of title 38, Code of Federal Regulations, provides:

Where evidence establishes [CUE], the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the grounds of [CUE] has the same effect as if the corrected decision had been made on the date of the reversed decision.

38 C.F.R. § 3.105(a). The CUE claim presented here is a collateral attack on a final RO decision. *See Crippen v. Brown*, 9 Vet.App. 412, 418 (1996); *see also Fugo v. Brown*, 6 Vet.App. 40, 44 (1993).

In *Russell v. Principi*, the Court defined CUE as follows:

Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied. . . . [CUE is] the sort of error which, had it not been made,

4

would have manifestly changed the outcome . . . [, an error that is] undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed at the time it was made.

*Russell*, 3 Vet.App. 310, 313-14 (1992) (en banc); *see also Bustos v. West*, 179 F.3d 1378, 1380 (Fed. Cir. 1999) (expressly adopting the "manifestly changed the outcome" language in *Russell*, *supra*), *cert. denied*, 120 S.Ct. 405 (1999). "A determination that there was a '[CUE]' must be based on the record and the law that existed at the time of the prior . . . decision." *Id.* at 314. "In order for there to be a valid claim of [CUE], . . . [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated." *Id*. at 313; *see also Damrel v. Brown*, 6 Vet.App. 242 (1994). Moreover, a CUE claim must identify the alleged error(s) with "some degree of specificity". *Crippen*, 9 Vet.App. at 420; *Fugo*, 6 Vet.App. at 44 ("to raise CUE there must be some degree of specificity as to what the alleged error is and . . . persuasive reasons must be given as to why the result would have been *manifestly* different"). On appeal of a BVA determination that there was no CUE in a prior final RO decision, the Court's review is limited to determining whether the Board's conclusion is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (38 U.S.C. § 7261(a)(3)(A)) and whether it is supported by an adequate statement of "reasons or bases" (38 U.S.C. § 7104(d)(1)). *See Eddy v. Brown*, 9 Vet.App. 52, 57 (1996); *Damrel*, 6 Vet.App. at 246; *Russell*, 3 Vet.App. at 315.

As the basis for his claim of CUE in the April 1977 RO decision denying service connection for arthritis, the appellant asserts that the RO failed "to properly apply the presumption of service connection under 38 C.F.R. § 3.307(a)(3)" to the facts of his case. Br. at 4. That regulation, as in effect in April 1977, had provided a presumption of service connection to a veteran who developed a disease listed in 38 C.F.R. § 3.309(a) (1976) (in which "arthritis" was listed) "to a degree of 10[%] or more within [one] year . . . from the date of separation from service". 38 C.F.R. § 3.307(a) (1976); *see also* 38 C.F.R. § 3.309(a) (1976). Although in this case the Board appears to have disallowed the veteran's claim on the ground that CUE was not alleged with sufficient specificity (R. at 9); *see Crippen* and *Fugo*, both *supra*, the Court will affirm the BVA decision on different grounds.

The veteran asserted in his May 1996 Substantive Appeal to the BVA that the statement of Dr. Ford (R. at 182), had provided an evidentiary basis for a 10% disability rating for the veteran's

5

arthritis, based on the one-year presumption period set forth in § 3.307(a) (1976). R. at 359-60. The RO in its May 1977 letter explaining the April 1977 denial had explicitly stated that "Dr. Ford's statement provide[d] no basis to establish service connection for arthritis". R. at 186. The veteran argued that the RO's conclusion had been "absolutely not realistic" and thus constituted CUE. R. at 359. The veteran's claim is thus a request for a reweighing of the evidence, which is not a permissible basis for a CUE claim, *Russell*, 3 Vet.App. at 313; when there is evidence both pro and con on the issue it is impossible for the appellant to succeed in showing that "the result would have been *manifestly* different", *Fugo, supra*. Because, as noted by the Board, there was evidence in the veteran's claims file in April 1977 "to the effect that the onset of arthritis began in December 1971 [more than a year after his January 1970 discharge], [including] the veteran's [own] statement during the August 1974 VA examination [(R. at 123)] . . . , indicating the same" (R. at 10), the Court cannot disturb, on the ground that it was arbitrary or capricious or otherwise not in accordance with law, the Board's conclusion that the April 1977 RO decision did not contain CUE. *See* 38 U.S.C. §§ 5109A, 7261(a)(3)(A); 38 C.F.R. § 3.105(a); *Bustos*, *Eddy*, *Damrel,* and *Russell*, all *supra.*

### B. Finality of the April 1977 RO Decision

In his November 2, 1999, supplemental memorandum, the appellant argues that "VA's failure to obtain a comprehensive medical evaluation to determine whether the 10% threshold under 38 C.F.R. § 3.309(a) [(1976)] [sic] had been met constituted a breach of its duty to assist", and that "[u]nder *Hayre*[, *supra*], the appellant's 1977 claim to entitlement to service[-]connected arthritis should be considered unadjudicated or nonfinal." In *Hayre*, the Federal Circuit held that "[i]n cases of grave procedural error . . . RO or Board decisions are not final for purposes of direct appeal". *Hayre*, 188 F.3d at 1333. Specifically, that court held that an RO's failure to obtain the SMRs of the appellant that he had specifically requested be obtained and its failure to notify him of its failure to obtain them may have constituted a grave procedural error and, if so, then the RO decision at issue there was not final. *See id.* at 1335 ("if the Court of Appeals for Veterans Claims finds that the RO breached the duty to assist in 1972, then the 1972 RO decision is not final for purposes of direct appeal").

In so holding, the Federal Circuit seemed to place substantial weight on three factors, none of which is present here. First, the Federal Circuit iterated no less than eight times that the VA

6

assistance sought was "specifically requested", *Hayre*, 188 F.3d at 1331-34 (although the opinion recognized that a specific request for VA to obtain particular records may not be required in all circumstances in order for the duty to assist to be triggered); *id.* at 1331 ("duty to assist may arise when a claimant simply refers to the pertinent private medical examinations or treatments without making a specific request"). Second, the *Hayre* opinion stressed the lack-of-notice element of that case that may "undermine[ ] the operation of the veterans' benefits system by altering its manifestly pro-claimant character and jeopardizing the veteran's ability to appeal in what may appear to be a fundamentally unfair manner". *Id.* at 1334 (quoting extensively from General Accounting Office and Senate Committee on Veterans' Affairs reports, cited therein, that "illustrate[d] that in the veterans' uniquely claimant friendly system of awarding compensation, systemic justice and fundamental considerations of procedural fairness carry great significance . . . , especially early in the VA adjudicatory process"). A similar concern about the importance of the BVA's responding to a claimant in connection with the claimant's specific request for assistance was expressed by this Court very early in its existence when we held in *Godwin v. Derwinski* that "[i]nherent in the duty-to-assist obligation and the *Gilbert*[ *v. Derwinski*, 1 Vet.App. 49, 56-57 (1990),] explanation mandate is a requirement for the Secretary to respond to a claimant's request for VA assistance one way or the other." *Godwin*, 1 Vet.App. 419, 425 (1991).

Third, the Federal Circuit in *Hayre* seems to have considered the particularly vital role that SMRs can play in determining the question of in-service incurrence of a disability. *Id.* at 1334 ("[n]otice to the claimant explaining the failure to obtain pertinent and specifically requested SMRs is therefore essential to insuring that the [RO] . . . will adequately develop a veteran's claim before deciding it on the merits"). The opinion also stressed that "VA has substantively defined its obligation to obtain SMRs in its VA Adjudication Procedure Manual M21-1", *id.* at 1331; that "the veteran's possession of [SMRs] is a decidedly abnormal situation"; and that "[t]he veteran cannot reasonably be expected to have such records", *id.* at 1332 (internal quotation omitted). Indeed, VA has itself recently recognized the special role of SMRs and VA's access to them. *See* VA Veterans Benefits Administration Letter 20-99-60 at 1 (Aug. 30, 1999) [hereinafter VBA Letter 20-99-60] (directing all ROs that certain medical records "will not be requested prior to a determination that the claim is well grounded" but also directing as follows: "Service medical records and VA medical

center [(VAMC)] records are to be requested *in all cases*. These are records considered to be in VA custody." (emphasis added)).

In this case, however, the issue is not a failure to give adequate *notice* as to circumstances regarding *missing SMRs* that the appellant *specifically requested* VA to obtain; rather, the appellant asserts that the RO had had a duty in this case, on its own initiative, to provide for a VA medical examination in 1977 regarding whether he had manifested symptoms of arthritis to a degree of 10% disabling within one year after his discharge from the service in January 1970, for the purposes of determining the applicability of the presumption of service connection under 38 C.F.R. §§ 3.307(a) and 3.309(a) (1976). Given the Federal Circuit's emphasis in *Hayre* on the need for VA to respond to assistance that was "specifically requested", on the fair "notice" aspect, and on the particular importance of SMRs, the Court concludes that *Hayre* does not require that a breach of the duty to assist such as is alleged in this case (failure to carry out, sua sponte, a VA examination) be considered such a grave procedural error as to have tolled the finality of the April 1977 RO decision.

We reach this conclusion on the assumption, but do not decide because we need not, that in April 1977 there was a well-grounded-claim requirement; that satisfying any such requirement was then a prerequisite to the triggering of a duty to assist; and that the RO in April 1977 had been presented with a well-grounded claim, *see Hayre*, 188 F.3d at 1331 (recognizing that duty to assist applies "[o]nce a claimant has submitted a well-grounded claim"). *Cf. Caffrey*, 6 Vet.App. at 383 (holding that VA breached duty to assist in 1975 adjudication of well-grounded claim, but providing no authority in support of determination that duty to assist existed at that time); *id.* at 385 (Steinberg, J., dissenting) (noting that "it would be reasonable to conclude that there was a comparable duty to assist since at least the 1972 promulgation of [38 C.F.R. ]§ 3.103(a)"). We further assume, arguendo, that the duty to assist in April 1977 had encompassed a duty to obtain a medical examination specifically regarding the application of 38 C.F.R. §§ 3.307(a) and 3.309(a). *Cf. Hayre*, 188 F.3d at 1335 (remanding to this Court for determination whether RO had "breached the duty to assist *in 1972*" (emphasis added)). In regard to the above assumptions made for the purposes of the above analysis, however, we note that the appellant in this case has not shown that such assumptions are correct; that is, he has not shown that an extant and applicable VA duty to assist was violated in 1977. We hold that such a failing would otherwise be fatal to the *Hayre* relief that he seeks. Given

8

the rather murky state of the law and VA regulations prior to the enactment of the Veterans' Judicial Review Act (VJRA), Pub. L. No. 100-687, Div. A, 102 Stat. 4105-4122 (1988) (found at 38 U.S.C. § 7251 note), insofar as the circumstances under which VA had a duty to assist and what that duty comprised, in order for an appellant to prevail on a contention that a pre-VJRA claim remained open under the *Hayre* approach, the appellant must first establish that a breach of an extant and applicable duty to assist occurred in connection with the adjudication of that pre-VJRA claim.

Unlike the situation in *Hayre* pertaining to existing medical records, the veteran in this case was not in an "abnormal situation" where VA was in control of evidence necessary to prove his claim, *Hayre*, 188 F.3d at 1332; *see also* VBA Letter 20-99-60, *supra* (SMRs and VAMC "records considered to be in VA custody"). Rather, in this case the veteran could readily have obtained a medical examination from a private physician and submitted the results of such examination along with the other private medical evidence that the veteran submitted in April 1977. R. at 182. In fact, the record on appeal contains several private medical records submitted to VA by the veteran at various times following his service. *See, e.g.*, R. at 86, 98-101, 149, 182. There is no reason to believe that the veteran could not have sought from those private physicians the medical opinion that he now alleges should have been sought, sua sponte, by VA in 1977.

Not only do we believe that *Hayre* does not **require** that a "garden variety" breach of VA's duty to assist, in the development of a claim that is well grounded, be construed as tolling the finality of an underlying RO decision, but we also believe that it would be unwise for this Court to extend *Hayre* to encompass such a duty-to-assist violation. At some point, there is a need for finality within the VA claims adjudication process; thus, the tolling of finality should be reserved for instances of "grave procedural error" -- error that may deprive a claimant of a fair opportunity to obtain entitlements provided for by law and regulation. *Hayre*, 188 F.3d at 1333. For example, where documents containing certain information are under VA control (real or constructive), failure to produce them is likely to frustrate an award of benefits. *See* VBA Letter 20-99-60, *supra.* Conservative application of the *Hayre* tolling-of-finality doctrine is consistent with the rationale of the Federal Circuit, which was grounded on Court precedents that are firmly rooted in statutorily established fundamental principles of notice and the opportunity to be heard. The Federal Circuit analogized to *Tablazon v. Brown*, and the cases cited therein, which held that in the rare

circumstance "where an appellant 'never received notification of any denial . . . , the one-year period within which to file an NOD, which commences with the date of mailing of notice of the result of initial review or determination, did not begin to run'", because such notice is required by statute and is fundamental to a full and fair adjudication of a veteran's claim. *Tablazon*, 8 Vet.App. 359, 361 (1995) (quoting *Hauck v. Brown*, 6 Vet.App. 518, 519 (1994) (internal quotation marks omitted)). Moreover, the limited jurisdiction assigned to the Court by Congress also counsels against a broad application of the *Hayre* finality exception to cover old breaches of the duty to assist that did not seriously impair a claimant's opportunity to be awarded benefits. *See* Veterans' Judicial Review Act, Pub. L. No. 100-687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) (Court generally has jurisdiction to review a final BVA decision only where an NOD was filed on or after November 18, 1988); *Velez v. West*, 11 Vet.App. 148, 157 (1998); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988); *Prenzler v. Derwinski*, 928 F.2d 392, 393-94 (Fed. Cir. 1991); *Skinner v. Derwinski*, 1 Vet.App. 2, 3 (1990).

Accordingly, because we hold that *Hayre* does not and should not apply in this case so as to render nonfinal the April 1977 RO decision and because of the applicability to the CUE claim in this case of the Court's precedents to the effect that a VA breach of the duty to assist does not generally constitute a ground for a colorable CUE claim, the Board's decision must be affirmed. *See Hayre*, 188 F.3d at 1333 (affirming that no CUE claim could be based on an alleged legal error when claimant "cannot prove" that alleged error "would manifestly change the outcome of the" decision being assailed for CUE (quoting *Bustos*, 179 F.3d at 1381)); *Crippen* and *Fugo*, both *supra; see also Caffrey v. Brown*, 6 Vet.App. 377, 383-84 (1994) (breach of duty to assist generally cannot constitute basis for CUE claim).

### III. Conclusion

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the Court holds that the Board's determination that the April 1977 RO decision did not contain CUE is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under 38 U.S.C. § 7261(a)(3)(A) and 38 U.S.C. § 5109A and 38 C.F.R. § 3.105(a), and that the appellant has not demonstrated that the BVA committed error under 38 U.S.C. § 7104(d)(1) in its articulation

of reasons or bases, so as to warrant reversal or remand. Therefore, the Court denies the Secretary's motion for single-judge affirmance but grants the remainder of the Secretary's motion and affirms the January 1998 BVA decision. The Court, sua sponte, withdraws its May 12, 2000, opinion and issues this opinion in its place; consequently, the appellant's July 3, 2000, motion for panel reconsideration of the May 12, 2000, opinion is denied as moot.

AFFIRMED.