KRAMER, Judge,
concurring in part and dissenting in part:
As the author of the opinion in this case that was withdrawn, I happily concur with Parts II.A, B., C., and D., óf the majority opinion. However, I cannot agree with the majority’s approach and conclusion in Part II.E., and I dissent to that extent.
As a preliminary matter, I note that I share the majority’s concern regarding the possible implications of a broad reading of the decision of the United States Court of Appeals for the Federal Circuit (Federal Circuit) in Hayre v. West, 188 F.3d 1327, 1332-35 (Fed.Cir.1999), including, absent statutory authority, the vitiation of the finality of a VA decision. See id. at 1333 (VA’s breach of duty to assist by failing to obtain specifically requested service medical records (SMRs), and failing to so notify claimant, is “grave procedural error” justifying holding otherwise final VA decision open); see also 38 U.S.C. § 5107(a) (VA has duty to assist in development of well-grounded claim). That said, there is no question that Hayre is binding precedent, and there is no question that the appellant here submitted a well-grounded non-service-connected pension claim. Consequently, VA had a duty to assist in the development of that claim that included, in the majority’s words, “obtaining all relevant S[oeial] Security] A[dministration (SSA)] records regarding his disability and employability,” ante at 108-109, and that the Board breached that duty when it failed to seek and obtain SSA medical records after receipt of an SSA decision determining that, as of May 1985, the appellant was totally disabled and unable to undertake any employment. Record (R.) at 45,168,170, 432-33; see Voerth v. West, 13 Vet.App. 117, 121 (1999); Baker v. West, 11 Vet.App. 163, 169 (1998); Murincsak v. Derwinski, 2 Vet.App. 363, 370 (1992). Nevertheless, the majority, relying on the Court’s decision in Simmons v. West, 13 Vet.App. 501 (2000), reconsidered, 14 Vet.App. 84 (2000), has created a construct whereby a breach of the duty to assist in each case must of necessity be measured by its degree of importance. For the following reasons, the majority’s analysis is flawed.
First, VA’s duty to assist in the development of a claim attaches only where a claimant first has submitted a well-grounded claim. See 38 U.S.C. § 5107(a); Epps v. Gober, 126 F.3d 1464, 1469 (Fed.Cir.1997). Although a well-grounded claim is a “plausible” claim, that is, a claim that is meritorious on its own or capable of being substantiated, Murphy v. Derwinski, 1 Vet.App. 78, 81 (1990), a claim that is well grounded does not necessarily warrant an award of veterans’ benefits (but a claim that warrants benefits is always well grounded). See, e.g., Vargas-Gonzalez v. West, 12 Vet.App. 321, 328 (1999) (discussing evidence necessary to establish entitlement to non-service-connected pension); see also Rose v. West, 11 Vet.App. 169, 171 (1998) (evidence necessary to establish service connection); Caluza v. Brown, 7 Vet.App. 498, 506 (1995) (same), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table). Thus, within the “manifestly pro-claimant” VA benefits system, Hayre, 188 F.3d at 1333, the purpose of the duty to assist is for VA to undertake the necessary eviden-tiary development to, in essence, determine if the quantum of evidence can be raised from that sufficient to well ground a claim to that sufficient to bring the evidence into equipoise. See 38 U.S.C. § 5107(b) (where approximate balance of positive and negative evidence exists regarding material issue, benefit-of-doubt in resolving such issue given to claimant); *112 Hayes v. Brown, 5 Vet.App. 60, 69-70 (1993) (benefit of doubt doctrine applicable where evidence is in “equipoise”); Gilbert v. Derwinski 1 Vet.App. 49, 53 (1990) (same). In other words, the purpose of the duty to assist, with respect to each and every well-grounded claim, is for VA to obtain the evidence necessary to determine whether an award of benefits is warranted. In such a scheme, there can be no “major” or “minor” violation of the duty to assist; every action taken pursuant to that duty is to obtain the missing quantum of evidence that may make the difference in an award of benefits.
Second, the majority bases its differentiation between major and minor breaches of the duty to assist on the Court’s statement in Simmons that “Hayre does not require that a ‘garden variety’ breach of VA’s duty to assist ... be construed as tolling the finality of an underlying RO decision”. Simmons, 13 Vet.App. at 508 (emphasis in original), reconsidered, 14 Vet.App. at 91. The majority fails to acknowledge, however, that such language was mere dictum, and that the Court in Simmons nevertheless also concluded that the appellant there “ha[d] not shown that an extant and applicable VA duty to assist was violated” and that “such a failing” was “fatal to the Hayre relief [sought].” Simmons, 13 Vet.App. at 507, reconsidered, 14 Vet.App. at 90. Moreover, the Simmons Court, in essence, distinguished between a case involving potential evidence that the claimant easily would be able to obtain on his or her own, such as where “the veteran could readily have obtained a medical examination from a private physician and submitted the results,” and a case involving already-existing evidence in the possession of VA (“VA was in control of evidence necessary to prove [the] claim”), and concluded that the latter situation would represent a “grave procedural error.” Simmons, 13 Vet.App. at 508, reconsidered, 14 Vet.App. at 91 (citing Veterans Benefits Administration Letter 20-99-60 at 1 (Aug. 30, 1999) (deeming SMRs and VA medical center records to be in VA custody)). Although what is involved in this case is SSA, rather than VA, records, it is clear that VA knew that such records existed and were in the possession of the Federal government. Clearly, then, the case before us is much more analogous to the latter, i.e., a “grave procedural error,” than to the former, i.e., a “garden variety breach,” as described in Simmons.
Third, despite the Board’s acknowledged breach of the duty to assist here, the majority declines to hold open the 1990 Board decision on the basis that, at the time of that decision, the law pertaining to VA’s duty to assist by obtaining SSA records “was not clearly defined.” Ante at 109. By this, the majority apparently means that at the time of the 1990 Board decision there was no VA Adjudication Procedure Manual M21-1 (Manual M21-1) provision, or other internal VA issuance, extant that required VA to undertake the action that it failed to do (i.e., to obtain SSA records after receiving notice of an SSA decision awarding the appellant benefits on the basis of total unemployability), and that the Court’s caselaw holding to that effect had not yet been issued. Ante at 109-110; see Hayre, 188 F.3d at 1331-32 (discussing VA Adjudication Procedure Manual M21-1, Part VI, Para. 6.04(b), requiring VA to make supplemental request for SMRs when initial request results in obtaining only partial records); see also Masors v. Derwinski, 2 Vet.App. 181, 188 (1992) (VA failure to obtain SSA records after receipt of SSA decision determining unemployability is breach of duty to assist). However, the majority ignores that, at the time of the 1990 Board decision, Congress had mandated that VA’s duty to assist a well-grounded claimant “shall include requesting information as described in section 3006 of this title.” 38 U.S.C. § 3007(a) (1988) (recodified in 1991 as 38 U.S.C. § 5107(a) by Pub.L. No. 102-40, § 402(b)(1), (d)(1), 105 Stat. 238, 239). Former section 3006 provided that “[t]he *113 head of any Federal department or agency shall provide such information to [VA] as [VA] may request for purposes of determining eligibility for or amount of benefits or verifying other information with respect thereto.” 38 U.S.C. § 3006 (1988) (recodi-fied in 1991 as 38 U.S.C. § 5106 by Pub.L. No. 102-40, § 402(b)(1), 105 Stat. 238).
Thus, in the present case, at the time of its 1990 decision, the Board’s duty to obtain the appellant’s SSA records, which were certainly highly pertinent to the his pension claim, was explicitly outlined by statute. See generally Hayre, 188 F.3d at 1331 (recognizing that “[r]easonable efforts by the VA to obtain records regarding medical history from other Federal departments or agencies are an important part of the VA’s affirmative duties under [former section 3007(a) and] 38 U.S.C. § 5107(a)”); Masors, 2 Vet.App. at 187-88. The fact that VA had not seen fit to set forth that duty in a Manual M21-1 provision and that the Court had not yet specifically so held, therefore, is irrelevant. Contrary to the majority’s view, ante at 109-110, in light of such a statutorily prescribed obligation, the Secretary’s argument that “at the time of the 1990 decision, the scope of the Secretary’s duty to assist concerning the procurement of SSA records was not clearly defined,” should be rejected. Indeed, given the statutory requirement, the majority’s characterization of this argument as “persuasive,” and its determination that it therefore would be “unfair to conclude that the Board, under the duty to assist, should have requested the records relied upon by the [SSA],” id., simply is inexplicable. In sum, I believe there was no ambiguity as to the Board’s duty in 1990 to seek and obtain the appellant’s SSA records.
Fourth, even assuming that there was such an ambiguity, however, and that the two-tiered approach to breaches of the duty to assist adopted by the majority and by the panel in Simmons is -appropriate, such that in order to hold an otherwise final decision open under Hayre, it must first be determined whether a breach of a duty to assist “ ‘may deprive a claimant of a fair opportunity to obtain entitlements provided for by law and regulation,’” ante at 110 (quoting Simmons, 13 Vet.App. at 508, reconsidered 14 Vet.App. at 91), the majority’s evaluation as to why there has been no such deprivation here is problematic. Without further analysis, the majority simply seems to conclude that the “dearth of clear authority to guide the Board in 1990 concerning the procurement of SSA records” equates to no “de-priv[ation] of a fair opportunity.” Ante at 110. However, the two concepts are not equatable. The former goes to the clarity of the requirement; the latter goes to the impact on the appellant of not meeting the requirement. In other words, the former is procedural and the latter is substantive. Can there be any doubt that the failure to undertake even a “vague” procedural requirement can nevertheless “deprive a claimant of a fair opportunity” and thus result in substantial adverse impact to a claimant? Moreover, in the present case, it is clear from the record that the Board’s failure to obtain the appellant’s SSA medical records in 1990 deprived the appellant of the opportunity to obtain pension benefits at that time and resulted in the almost 5-year delay in the award to the appellant of pension benefits. Under the majority’s own statement of facts, the Board in 1990, although it acknowledged the appellant’s SSA award decision, essentially ignored the existence of the appellant’s SSA medical records and their pertinence to the question of his unemployability. Without the benefit of having all of that evidence before it, the Board stated: “We recognize that the [appellant] has been found entitled to disability benefits from the [SSA], but we are not persuaded that he is permanently and totally disabled within the meaning” of the laws governing veterans’ benefits. R. at 45^46. Subsequently, however, when the appellant attempted to reopen his pension claim, the RO recognized that VA should have obtained the *114 appellant’s complete SSA medical records, and declined to make a decision on the claim to reopen until it had obtained the records from SSA. R. at 168, 170, 185. Upon receipt of the SSA records, the RO awarded pension entitlement in December 1994, stating: “[Njumerous evaluations and medical reports ... provided by the [SSA] show [the appellant] suffering from impairments which restrict his capacity to perform basic work activities.... [Considering ... his long and well-established unemployability and Social Security disability being his only source of income, entitlement to pension is conceded.” R. at 184. From such a record, it is obvious that, despite the fact that the Board in 1990 had before it some of the same evidence that was before SSA when it made its determination of unemployability, see ante at 109-110, the sum of the evidence contained in the appellant’s SSA medical records, finally obtained by VA in 1994, tipped the balance and resulted in the award of pension benefits. Thus, contrary to the majority’s conclusion that the appellant was not deprived of a fair opportunity to obtain a benefit, see ante at 110, the deprivation of more than 4 years of pension benefits clearly rests upon the Board’s breach of its duty to assist in 1990.
Fifth, the facts of this case fit squarely into the scenario contemplated by the Federal Circuit in Hayre as requiring the vitiation of the finality of a VA decision. In Hayre, an RO made a single request to the National Personnel Records Center for SMRs pertaining to the veteran’s claim for a nervous condition, about which it had been informed by the veteran. Although the RO did not obtain the SMRs, prior to denying the claim it neither informed the veteran that it did not obtain them, suggested that the veteran obtain them himself, nor suggested the submission of alternative evidence. That decision was not appealed and became final. See Hayre, 188 F.3d at 1329, 1332. The veteran subsequently was awarded service connection for post-traumatic stress disorder (PTSD), which decision he appealed on the basis that the RO denial contained clear and unmistakable error (CUE) and that he was entitled to an effective date based upon his original, denied claim for a nervous condition. Id. at 1329-30. The Federal Circuit cited sections 5107 and 5106, formerly sections 3007 and 3006 (as discussed above), in holding that VA’s duty to assist in the development of a claim included the making of more than a single, unfulfilled, request for SMRs (i.e., records in the hands of another Federal agency) and also included an obligation to notify a claimant of its failure to obtain such records and give the claimant the opportunity “to independently attempt to obtain the [records, or] to submit alternative evidence” prior to making a determination. Id. at 1332; see also Schafrath v. Derwinski, 1 Vet.App. 589, 593 (1991) (duty to assist requires VA either to “obtain the records before deciding the case or to explain[ the] failure to do so”); VA’s Adjudication Procedure Manual M21-1, Part VI, Para. 6.04(b), supra. That court then concluded that a breach of such duties to assist amounted to a “grave procedural error ... that vitiates the finality” of the underlying agency decision. Hayre, 188 F.3d at 1333. Finally, the Hayre court held that no remedy would be available through the veteran’s CUE claim “because Mr. Hayre cannot prove that the missing SMRs would manifestly change the outcome of the 1972 rating decision.” Id.; see, e.g., Baldwin v. West, 13 Vet.App. 1, 7 (1999) (breach of duty to assist cannot form basis of collateral attack on final decision through claim of CUE); see also 38 U.S.C. § 7111(e) (claims of CUE in final Board decision must be raised in first instance to Board).
Here, as in Hayre, the Board clearly breached its duty to assist the appellant when it failed to seek and obtain pertinent records in the hands of another Federal agency, the existence of which it was aware, failed to notify the appellant that it had not obtained them, and failed to notify *115 him that he could independently obtain them or submit alternative evidence, all prior to denying his claim. (To the extent that the majority attempts to limit the reach of section 5106 (formerly section 3006) to “information,” as contrasted with “records,” I note that the former encompasses more than the latter, which is a specific type of the former. See Webster’s New WORLD Dictionary 693 (3d Coll. Ed.1988) [hereinafter Webster’s] (information is, inter alia, “knowledge acquired in any manner; facts; data; learning; lore ... a person or agency answering questions as a service to others”); Webster’s at 1122 (a record is, inter alia, “anything that is written down and preserved as evidence; [an] account of events; ... the known or recorded facts about anyone or anything”). Moreover, to suggest that the records in question do not constitute “information as described in section 5106,” “for purposes of determining eligibility for or amount of benefits,” ante, slip op. at 109 (quoting section 5107(a) and section 5106, respectively), simply “won’t play in Peoria.”) In addition, also as in Hayre, the appellant had no possible CUE remedy for the breach. (I note that, in its 1997 decision, the Board stated that the appellant presented no legal basis “to negate and ignore the March 1990 final Board decision.” R. at 10.) Finally, although I acknowledge that the veteran in Hayre had asked for VA assistance in obtaining his SMRs prior to the RO making the denial, and that the appellant here had not, such distinction is without effect. As succinctly stated by the Federal Circuit, “[i]f a veteran, who is later able to obtain counsel or serendipitously discovers a breach of the duty to assist, has no remedy, then the duty to assist becomes a hollow obligation.” Hayre, 188 F.3d at 1334 (emphasis added). Therefore, the finality of the 1990 Board decision should be held to be vitiated under Hayre, and the matter remanded for further adjudication. See Simmons, 13 Vet.App. at 508, reconsidered 14 Vet.App. at 91.
Consequently, I am unable to agree with the majority’s reasoning or conclusion with respect to Part II.E., and I therefore respectfully dissent to that extent.