# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 98-1825

RICHARD A. DIXON, APPELLANT,

v.

HERSHEL W. GOBER,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided October 24, 2000   )

*Mark L. Bellamy,* of Marion, Virginia,  was on the brief for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Mary Ann Flynn*, Acting Deputy Assistant General Counsel, all of Washington, D.C.,  were on the brief for the appellee.

Before HOLDAWAY, IVERS, and GREENE, *Judges*.

HOLDAWAY, *Judge*:  The appellant, Richard A. Dixon, appeals a June 1998 decision of the Board of Veterans' Appeals (BVA or Board) which concluded that entitlement to an effective date earlier than April 1994 for a 100% rating for chronic paranoid schizophrenia was not warranted based on CUE in an August 1979 rating decision.  The Board remanded the appellant's claim for entitlement to permanency of a 100% disability rating for his service-connected chronic paranoid schizophrenia for further development.  Because the remanded claim is not yet the subject of a final Board decision, it is not part of the current appeal.  38 U.S.C. § 7266 (a)(1).

## I.  FACTS

The appellant served on active duty in the U.S. Navy from March 1966 until January 1976.  In December 1975, the appellant was examined by a Navy medical board.  He was diagnosed with

chronic paranoid schizophrenia, and found unfit for military service. Shortly thereafter, a physical evaluation board awarded the appellant a disability rating of 50%.

In February 1979, a physical evaluation board rated the appellant as 30% disabled. The appellant filed a claim the following month for chronic paranoid schizophrenia, was awarded service connection, and was assigned a rating of 30% with an effective date of February 1978. In April 1979, the appellant filed a Notice of Disagreement (NOD) asserting that he was entitled to a rating of 100%. The appellant notified VA in his NOD that he was receiving disability income from the Social Security Administration (SSA), and attached a copy of his award notice. However, the SSA award notice did not indicate what disability the appellant was receiving benefits for, and the appellant failed to attach any other SSA records to his NOD. The appellant notified the VA regional office (VARO), in a letter written by his attorney, that the SSA award was based upon an SSA determination that he was 100% disabled. VA responded by denying the request for an increased evaluation, stating that "the evidence [did] not warrant any change in [the] previous determination." The appellant immediately filed a second NOD, but again did not address concerns, if any, that he had about any other SSA records he had not submitted with his claim.

In June 1979, the appellant underwent VA examinations. The examining physicians summarized their findings as follows:

> The [appellant] demonstrate[d] bright normal general level[s] of intellectual function, with no evidence of any neuropsychological impairment. He ha[d] a history of psychotic episodes in the past, although no evidence of psychosis was noted at the present. It is likely that under moderate to severe stress he may decompensate. . . . The [appellant] attempt[ed] to find a physical basis for his difficulty, [and] fail[ed] to take responsibility for his present situation.

In August 1979, the VARO issued a rating decision continuing the 30% rating, relying in part upon the June 1979 examinations which indicated that the appellant was not actively psychotic. The rating decision indicated that the VA examinations did "not show entitlement to an evaluation in excess of 30% for the [appellant]'s s[ervice-]c[onnected] schizophrenia condition," and that the "[e]vidence of record [did] not show entitlement to individual unemployability due to [a service-connected] disability." The record is devoid of any appeal as to that decision.

In May 1992, the appellant filed a claim for an increased rating. VA outpatient treatment records dated from April 1991 to April 1992 were associated with the claims file. An April 1991

treatment record reports the examiner's opinion that the appellant demonstrated no signs of psychosis. The examinations resulted in a diagnosis of schizophrenia by history and adjustment disorder with depressed mood.

In June 1992, the appellant was given a mental examination. His main complaint at the time was that he felt removed from emotional contact with people. The examiner noted that despite the appellant's complaints, he was taking two college courses and was getting fair grades, and opined that the appellant was competent for VA purposes. He diagnosed the appellant with "[s]chizophrenia, paranoid type, chronic, [but] stable."

In July 1992, the appellant filed a claim for an increase in his compensation based on unemployability. A November 1992 rating decision continued the 30% rating and denied the claim for unemployability. The VARO noted that the appellant had dealt well with his divorce, and that he was taking college classes in which he was receiving decent grades. The VARO determined that there was no "objective evidence to indicate [that] his ability to form favorable relationships with people [was] considerabl[y] impaired, nor that reliability, flexibility, and efficiency levels [we]re so reduced as to result in considerable industrial impairment." The rating decision concluded that "[individual unemployability was] not found."

In April 1994, the appellant requested to reopen his claim. Attached to his claim was a letter written by Dr. O'Connell, dated July 1993, which revealed a diagnosis of "schizophrenia, paranoid type," and "avoidant personality disorder." Dr. O'Connell stated that he felt that the appellant was "permanently and totally disabled for any kind of employment." A December 1994 rating decision increased the appellant's rating from 30% to 50%. The decision indicated that a higher rating of 70% was "not warranted unless the record show[ed] symptomatology which produce[d] severe impairment of social and industrial adaptability."

In November 1995, the appellant filed an appeal for an increased evaluation for "chronic paranoid schizophrenia[,]" but the VARO continued the 50% rating. In January 1996, the appellant submitted an additional statement which was treated as an NOD. In March 1996, the VARO increased the appellants' evaluation from 50% to 100% effective April 29, 1994, the date the appellant requested to reopen his claim. The appellant then filed an appeal seeking entitlement to an effective date prior to April 1994, and entitlement to a permanent and total evaluation for chronic

3

paranoid schizophrenia. The appellant alleged that the August 1979 rating decision contained clear and unmistakable error (CUE). A July 1997 rating decision denied the appellant's claim of CUE as to the August 1979 decision.

In its June 1998 decision, the Board found that at the time of the August 1979 rating decision, there was no competent medical evidence of record which demonstrated that the appellant's chronic acquired paranoid schizophrenia was actively psychotic, that it was not until April 1994 that competent medical evidence was presented which indicated that the appellant was permanently and totally disabled from any kind of employment, and that the appellant's claim for entitlement to an increased rating for chronic acquired paranoid schizophrenia was received by VA on April 29, 1994. The Board took notice of the SSA award made in 1978, and concluded that an effective date prior to April 29, 1994, for a grant of a 100% evaluation for chronic acquired schizophrenia based on CUE in the August 1979 rating decision was not warranted.

## II. ANALYSIS
### A. April 1994 decision

The appellant contends that the VARO failed in its legal obligation to assist by failing to ensure that the SSA records were available when it reached its April 29, 1994 decision. Once a claimant has submitted a well-grounded claim, the Secretary has a duty to assist the claimant "in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a). Included in this duty is the responsibility of VA to obtain any relevant records from the SSA. *See Murincsak v. Derwinski*, 2 Vet.App. 363, 370 (1992). VA has a statutory duty to acquire both the SSA decision and the supporting medical records pertinent to a claim. *Masors v. Derwinski*, 2 Vet.App. 181, 188 (1992) (where VA has SSA decisions determining disability and unemployability for SSA purposes, VA is required to obtain SSA records relating to those decisions); *see also* 38 U.S.C. §5107 (a).

The appellant requested that this case be remanded so that the Board may obtain the SSA records which were not previously before it when it rendered its April 1994 decision. The only purpose for such actions in instances such as this, where entitlement has been granted, would be to either change the effective date of the entitlement, or to increase the rating. Neither of these arguments is persuasive enough to warrant a remand in this case. The assignment of an effective

4

date for disability compensation is governed by statute and regulation. Pursuant to 38 U.S.C. § 5110 (a), unless specifically provided otherwise, the effective date of an award based on an original or reopened claim "shall not be earlier than the date of receipt of application thereof." *See also* 38 C.F.R. § 3.400. The appellant filed his claim to reopen on April 29, 1994. While it was not until March 1996 that the appellant was awarded an evaluation of 100%, that decision granted benefits retroactively to the date on which the claim was filed in accordance with section 5110 (a). Not only can the effective date of the appellant's award not be prior to April 29, 1994, but there was no further increase in the evaluation possible because the same decision which affixed the effective date also rated the appellant at 100%, the maximum allowable. For these reasons, the Court concludes that the Board's failure to obtain the SSA records prior to its April 1994 decision did not result in prejudice to the appellant and therefore, if erroneous, was harmless. *See Russell v. Principi*, 3 Vet.App. 310, 313 (1992) (en banc).

### B. August 1979 decision

The appellant also asserts that VA's failure to obtain his SSA records in August 1979 constitutes a violation of VA's duty to assist, and therefore, there is CUE as to that decision. The U.S. Court of Appeals for the Federal Circuit's holding in *Hayre v. West*, 188 F.3d 1327 (Fed. Cir. 1999), has muddied the previous bright line rule dealing with failures on the part of VA to fulfill its duty to assist, and in doing so, has created an issue of finality in certain cases which needs to be addressed. Therefore, the Court will address both the issue of CUE, and the issue of finality as it relates to the 1979 decision separately.

### 1. CUE

This Court has long held that a failure of a duty to assist does not rise to the level of CUE. *See Baldwin v. West*, 13 Vet.App. 1, 7 (1999) ("a breach of the duty to assist . . . cannot form the basis of a CUE claim"); *Caffrey v. Brown*, 6 Vet.App. 377, 383-84 (1994); *see also Hayre,* 188 F.3d at 1330-32 (ratifying *Caffrey, supra*, as to the issue of CUE). Therefore, the decision of Board as to the issue of CUE will be affirmed.

### 2. Finality

Prior to the Federal Circuit's holding in *Hayre*, the only collateral attack available on a final rating decision was an allegation of CUE, for which the appellant had to satisfy the most stringent

standards by showing that the challenged decision was arbitrary, capricious, or not otherwise in accordance with the law. *See Baldwin, supra*. The Federal Circuit's holding in *Hayre* changed that by providing veterans a means by which to attack, though technically not considered collateral in nature, a "final" rating decision, by claiming that VA failed in its duty to assist, which, if demonstrated, serves to "vitiate the finality" of that particular rating decision. While the Federal Circuit reasoned that such drastic measures were required to protect the veterans from the "undermin[ing] of the operation of the veterans' benefits system[,]" the holding was not meant to be a blanket rule. This Court has held that a "[c]onservative application of the *Hayre* tolling-of-finality doctrine" should be utilized, and that that use should be limited in scope and "reserved for instances of grave procedural error" which may "deprive a [veteran] of a fair opportunity to obtain entitlement provided for by law and regulation. *Simmons v. West,* 13 Vet.App. 501, 508 (2000).

The Court notes that the distinction between *Hayre* and this case is that *Hayre* addressed VA's violations of the duty to assist as it relates to the VARO's acquiring of service medical records, documents which the Court points out are under VA control, whereas the issue in the instant case is the acquisition of the veteran's SSA records, documents not only not under VA control, but also not clearly pertinent to the claim presented.

"The Federal Circuit did not hold that all breaches of the duty to assist are such grave procedural errors that they render a claim nonfinal", rather, it "singled out [the failure of VA to obtain] SMRs for special attention[,]" because they are generally in the control of VA and are otherwise irreplaceable. *Hurd v. West*, 13 Vet.App. 449, 453 (2000).

The Court can find no instance in the August 1979 decision where the appellant was deprived "of a fair opportunity to obtain entitlement provided for by law and regulation." *See Simmons, supra.* While it appears that the VARO did not attempt to independently acquire the records which were in the control of the appellant and the SSA, the VARO not only afforded the appellant numerous opportunities to submit such records, but also provided him with a complete medical examination prior to determining his eligibility for an increased rating. That examination, which appears to have included a review of the appellant's pertinent SMRs, resulted in opinions from two clinical psychologists that the appellant had "no evidence of any neuropsychological impairment[,] . . . no evidence of psychosis . . . at present[,]" and that the appellant simply "fail[ed] to take any

6

responsibility for his . . . situation."  While the appellant argues that the SSA "records *may* contain evidence relevant to [his] claim[,]" (emphasis added), he has not demonstrated that those records are in fact pertinent to his claim.  Moreover, it is noted that the appellant was represented by legal counsel in 1979, and that his counsel produced voluminous medical and other records, including the 1978 SSA award, in an attempt to reverse the initial VARO decision.  Having produced such records, it defies belief that the appellant would have omitted any records held by either himself or the SSA that would have aided in his claim.  Nowhere in either of his NODs to the 1979 decision did the appellant even mention his SSA records, other than to state that the SSA had deemed him disabled.  The appellant had ample opportunity to provide the VARO with his SSA records, and failed to do so.  In addition, he made no claim that further records were needed. Even now, with his SSA records in his control, he makes no assertion that these records are relevant, or that they would have affected the outcome of the 1979 decision.

In order for a veteran to succeed with this type of claim, he needs to do more than merely allege that there is a possibility that some past records, not under VA control, might contain information relevant to his claim.  The appellant must demonstrate that the records he seeks to compel VA to obtain are not only pertinent to his claim, but that they would also have had a substantial impact upon the challenged rating decision.  The appellant has made no such showing here.  Assuming arguendo that the Secretary marginally breached his duty to assist by not obtain the SSA records, such a breach would not have been the type of "grave procedural error" contemplated by the Federal Circuit in *Hayre* which would render a claim nonfinal.  If the SSA records contained information which would have affected the outcome of his claim, the appellant should have produced them when he had the opportunity to do so.  Therefore, because the appellant did not demonstrate that the putative records would have affected the outcome of the decision, any error on the part of VA in failing to obtain the appellant's SSA records is harmless.  Having produced the SSA award itself, and deliberately failing to produce any other records pertinent to that award, the appellant should not now be heard to complain.  The VARO had a right to believe that such records as would support the appellant's claim, and that the appellant wished to produce, had in fact been produced.

### III.  CONCLUSION

After consideration of the pleadings and a review of the record, the Court holds that *Hayre, supra,* does not apply to this case so as to render the August 1979 rating decision nonfinal.  In addition, the Court finds that the appellant has not demonstrated that the BVA committed either legal or factual error which would warrant reversal or remand.  The Court is satisfied that the BVA decision fulfills the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1).  *See Gilbert v. Derwinski*, 1 Vet.App. 49 (1990). The Secretary's motion is granted and the decision of the Board is AFFIRMED.