Citation Nr: 1229620 
Decision Date: 08/28/12 Archive Date: 09/05/12

DOCKET NO. 10-31 329 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUES

1. Entitlement to service connection for posttraumatic stress disorder (PTSD). 

2. Entitlement to service connection for hypertension, to include as secondary to herbicides exposure and/or PTSD. 

3. Entitlement to service connection for chronic obstructive pulmonary disorder (COPD), to include as secondary to herbicides exposure and/or PTSD. 

4. Entitlement to service connection for mitral regurgitation, claimed as a heart disorder, to include as secondary to herbicides exposure and/or PTSD. 

5. Entitlement to service connection for chronic sleep apnea, to include as secondary to PTSD. 

6. Entitlement to service connection for benign hypertrophy, claimed as an enlarged prostate disorder, to include as secondary to herbicides exposure. 




REPRESENTATION

Appellant represented by: Jeffrey J. Bunten, Attorney


WITNESSES AT HEARING ON APPEAL

Veteran and spouse


ATTORNEY FOR THE BOARD

G. Jivens-McRae, Counsel


INTRODUCTION


The Veteran served on active duty from July 1967 to July 1970. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from August 2009 and May 2010 rating decisions of the St. Louis, Missouri, Department of Veterans Affairs (VA) Regional Office (RO). By rating decision of August 2009, service connection for benign hypertrophy, COPD, hypertension, and mitral regurgitation was denied. By rating decision of May 2010, service connection for chronic sleep apnea and PTSD were denied. 

In May 2012, the Veteran testified at a Travel Board hearing before the undersigned Active Law Judge (VLJ). A transcript of that hearing is of record and associated with the claims folder. Subsequent to such hearing, the Veteran submitted additional evidence with a waiver of RO consideration. 38 C.F.R.§ 20.1304 (2011). Therefore, the Board may properly consider such newly received evidence.


Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2011). 38 U.S.C.A. § 7107(a)(2) (West 2002).

The issues of service connection for benign hypertrophy, claimed as an enlarged prostate, hypertension, COPD, chronic sleep apnea, and mitral regurgitation, claimed as a heart disorder being remanded are addressed in the REMAND portion of the decision below and are REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDING OF FACT

A VA psychologist diagnosed the Veteran as suffering from PTSD due to his fear of hostile military activity while service in Vietnam. 


CONCLUSION OF LAW

The criteria for entitlement to service connection for PTSD have been met. 
38 U.S.C.A. § 1110 (West 2002); 38 C.F.R. § 3.303 (2011), § 3.304(f) (2011). 


REASONS AND BASES FOR FINDING AND CONCLUSION

Duty to Assist and Notify

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2010). 

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183 (2002). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

In addition, the notice requirements of the VCAA apply to all five elements of a service-connection claim, including: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486. 

As for the claim of entitlement to service connection for PTSD, the Board is granting in full the benefit sought on appeal. Accordingly, assuming, without deciding, that any error was committed with respect to either the duty to notify or the duty to assist, such error was harmless and need not be further considered.


Service Connection for PTSD

Under the relevant laws and regulations, service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §1110. If a chronic disease is shown in service, subsequent manifestations of the same chronic disease at any later date, however remote, may be service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). However, continuity of symptoms is required where a condition in service is noted but is not, in fact, chronic or where a diagnosis of chronicity may be legitimately questioned. 38 C.F.R. § 3.303(b). 

In addition to the laws and regulations outlined above, service connection for PTSD requires: (1) medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a) (conforming to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV)); (2) medical evidence establishing a link between current symptoms and an in-service stressor; and (3) credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304(f) (2011). 

The Board notes that the provisions relating to the establishment of service connection for PTSD, found at 38 C.F.R. § 3.304(f), were amended, effective July 13, 2008. See 75 Fed. Reg. 39,843 -39,852 (Jul. 13, 2010) and 75 Fed. Reg. 41,092 (Jul. 15, 2010) (effectuating a correction to the July 13, 2010 Federal Register). As set forth in the Federal Register, the revised provisions of 38 C.F.R. § 3.304(f) were made effective July 13, 2010. The Veteran's claim for service connection for PTSD was pending before the Board after July 13, 2010, and therefore, the amended provisions of 38 C.F.R. § 3.304(f) are for consideration in this case. 

This recent regulatory change has eliminated the requirement for corroboration of a claimed in-service stressor if it is related to the Veteran's fear of hostile military or terrorist activity. It is necessary that a VA psychiatrist or psychologist, or a psychiatrist or psychologist with whom VA has contracted, confirms that the claimed stressor is adequate to support a diagnosis of PTSD and that the Veteran's symptoms are related to the claimed stressor, provided that the claimed stressor is consistent with the places, types, and circumstances of the Veteran's service. 
38 C.F.R. § 3.304(f)(3). 

The Veteran maintains that he warrants service connection for PTSD based upon his experiences while serving in Vietnam. Specifically, he states that he was directly exposed to combat during the TET Offensive. He related that a sniper came into their compound and he took rounds within 2 inches of his head. He stated that they were nearly overrun by the enemy, but the Cobras came in and drove the enemy back. He also stated that he had PTSD because of visions he often sees of a woman that he ran over with his dump truck while in Vietnam. The Veteran's DD Form-214 shows that his Military Occupational Specialty (MOS) was bridge specialist. He is not shown to be a recipient of a Combat Infantryman's Badge. He had a Vietnam Service Medal with 1 Silver Service Star. He has been diagnosed with PTSD and is seen on a regular basis by VA for his PTSD on an outpatient treatment basis. 

In June 2011, the Veteran underwent a VA PTSD examination. He indicated that he built bridges and roads while in Vietnam. He was in Vietnam during the TET Offensive. He served in Vietnam from November 1967 to November 1968. He recalled combat exposure during the TET Offensive in January 1968 when they were attacked by the enemy and Cobra helicopters kept the enemy back and kept them from being overrun. He stated that he experienced intense fear, feelings of helplessness, and horror. He stated he remembered he was to just keep down to keep from getting shot. He also related his feelings regarding hitting a civilian woman with a dump truck he was driving. Following a mental status evaluation, the Veteran was diagnosed with PTSD. The examiner stated that the Veteran met the DSM-IV stressor criterion related to the attacks during the TET Offensive, mortars coming in during the entire year he was stationed in Vietnam, and the running over of a civilian with a dump truck he was driving. The VA psychologist indicated that he met the DSM-IV criteria for a diagnosis of PTSD. 

In November 2011, the Veteran underwent another VA PTSD examination. The Veteran was administered the Combat Exposure Scale (CES); the PTSD Checklist-M; the Mississippi Scale for PTSD; the Beck Depression Inventory, and the Short Michigan Alcohol Screening Test (SMAST), as part of his Compensation and Pension Examination. The CES scores suggested moderate to heavy combat exposure. The PTSD Checklist assesses the degree which an individual has experienced specific symptoms of PTSD in response to "stressful military experiences" over the past month. The Veteran's score was below the cut-off for Veterans assessed in a VA Mental Health Clinic, and suggested a diagnosis of PTSD was not warranted. The Mississippi Scale for PTSD score was below the recommended cut-of which differentiates Veteran's with and without PTSD. His score indicated that he did not meet the level of intensity of PTSD symptoms for a diagnosis of PTSD. The Beck Depression Inventory indicated a score suggestive of a depressive disorder. The SMAST score indicated a probable diagnosis of an alcohol related disorder. The VA psychologist indicated that it was less likely than not that the Veteran had PTSD incurred in or caused by service. The psychologist stated that the Veteran had symptoms of anxiety and depression complicated by his medical health ailments which tended to intensify his experience of depression and anxiety. Additionally, he had significant financial stressors and noted that he was in the process of foreclosure on his home. The psychologist went on to state that the Veteran met the minimum criteria for PTSD, but the psychological testing revealed his experience of the symptoms did not reach the level of intensity sufficient to warrant a diagnosis of PTSD. He appeared to have an anxiety disorder not otherwise specified (NOS) and depressive disorder, NOS. Both the anxiety disorder and depressive disorder, according to the psychologist, appeared to be secondary and related to his medical impairments and financial distress. Finally, the psychologist stated that both the anxiety disorder, NOS, and depressive disorder, NOS, were less likely as not caused by or a result of his military experience. 

The Veteran testified at a Travel Board hearing in May 2012, before the undersigned VLJ. He related his experiences during the TET Offensive, and also of running over a civilian woman with his dump truck. He reported his present nightmares of these problems and his inability to sleep. He related his present group therapy for PTSD and that he is prescribed medication in treatment thereof. He also related that most of the time he was in Vietnam, he was in fear for his life and fear of bodily harm. 

It is important to note that the Veteran's service treatment records did not note any complaints or treatment for psychiatric issues. 

The Board has made a credibility determination that the Veteran's claimed stressors, related to his fear of hostile military activity, are consistent with the places, types, and circumstances of his service. For purposes of 38 C.F.R. § 3.304(f)(3), "fear of hostile military or terrorist activity" means that a veteran experienced, witnessed, or was confronted with an event or circumstance that involved actual or threatened death or serious injury, or a threat to the physical integrity of the veteran or others, such as from an actual or potential improvised explosive device; vehicle-imbedded explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft, and the Veteran's response to the event or circumstance involved a psychological or psycho-physiological state of fear, helplessness, or horror. 

As noted above, the Veteran's claimed stressors of being in fear for his life, engaging or witnessing combat, and incoming enemy mortar attacks appear consistent with the places, types, and circumstances of his service. The Board has also considered the Veteran's consistent contentions describing his fear of threatened death or serious injury described in his statements. 

As a finder of fact, the Board, when considering whether lay evidence is satisfactory, the Board may also properly consider internal inconsistency of the statements, facial plausibility, consistency with other evidence submitted on behalf of the Veteran, and the Veteran's demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007). The reports regarding the Veteran's in-service stressors have been factually consistent, whether being reported to VA claims adjudicators or VA medical providers. Moreover, and of equal import, the June 2011 VA examiner recognized the Veteran's fears and found them to be consistent with his military experiences. 

Consideration must be given to the two VA PTSD examinations (June 2011 and November 2011), one which found the Veteran met the DSM-IV criteria for PTSD, and the other, which stated that he did not meet the DSM IV criteria for PTSD but then also stated that the Veteran met the minimum criteria for PTSD. The June 2011 VA examination provided the Veteran with a mental status examination and evaluated the Veteran's symptomatology in connection with his claimed stressors. Based on incidents that rendered the Veteran fearful for his life while in Vietnam, and the clinical findings on examination, a diagnosis of PTSD, meeting the DSM-IV criteria was made. 

The November 2011, VA examination, however, did not indicate that a mental status examination had been provided. This examination consisted of several tests, and did indicate that the Veteran met the minimum criteria for PTSD, but the testing revealed his experience of the symptoms did not reach the level of intensity sufficient to warrant a diagnosis of PTSD. Although the CES scale suggested that the Veteran had moderate to heavy combat exposure, the PTSD checklist inventory assessed only the degree of which an individual had experienced PTSD symptoms in response to "stressful military experiences" over the past month. The requirement of a current disability is satisfied when the claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim, and that a claimant may be granted service connection even though the disability resolves prior to adjudication of the claim. McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). Therefore, although the PTSD checklist inventory only assessed the degree of the Veteran's PTSD symptoms in response to stressful military experiences over the past month, the fact that the Veteran has experienced these symptoms at other times during the appellate period is of more importance. 

The Court has held that to have probative value, a medical examination submitted to the Board must contain not only clear conclusions with supporting data, but also a reasoned medical explanation connecting the two. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 300-1 (2008); see Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) (a medical opinion must support its conclusions with an analysis that can be considered and weighed against contrary opinions). The June 2011 VA psychiatric examination provides such information. The VA psychologist personally interviewed and examined the Veteran, including eliciting a history from him, and reviewed the record in its entirety. After that, she provided a thoughtful opinion that explained that although the Veteran seemed to be fairly well adjusted at the time of the examination, he did meet the DSM-IV stressor criterion and the DSM-IV criteria for a diagnosis for PTSD. The Board therefore affords more significant probative value to the June 2011 VA examination report than to the November 2011 VA examination which did not indicate a mental status examination of the Veteran had been conducted, and did not provide a reasoned medical explanation as to why the Veteran met the minimum criteria for PTSD, but that this minimum criteria was not sufficient for a diagnosis of PTSD . 

Given the totality of the evidence, the Board finds that the evidence favors a finding that the Veteran's claimed stressors occurred. 

Additionally, as the Veteran's stressors relate to his fear of hostile military or terrorist activity, and a VA psychologist has confirmed that the Veteran's current symptoms combined with his experiences in Vietnam are sufficient to support a diagnosis of PTSD, the Board finds that the evidence supports a grant of service connection for PTSD. 


ORDER

Service connection for PTSD is granted. 


REMAND

The Veteran asserts that he has benign hypertrophy, hypertension, mitral regurgitation, and COPD, to include as due to or aggravated by herbicides exposure. It was also raised by his spouse on the record at Travel Board hearing in May 2012, that his hypertension, mitral regurgitation, and sleep apnea are by his PTSD. The Veteran also maintains that he has sleep apnea due to or aggravated by his PTSD. 

A review of the record indicates that the Veteran is in receipt of Social Security disability benefits. He claims that the onset of his disabilities warranting Social Security disability were in January 2004 and that he became initially entitled to the benefits in November 2008. The United States Court of Appeals for Veterans Claims (Court) has held that VA has a duty to acquire both the Social Security Administration (SSA) decision and the supporting medical records pertinent to a claim. See Dixon v. Gober, 14 Vet. App. 168, 171 (2000); Masors v. Derwinski, 2 Vet. App. 181, 188 (1992). However, in Golz v. Shinseki, 590 F.3d 1317 (Fed. Cir. 2010), the Federal Circuit held that VA's duty to obtain SSA records was not absolute, and that the duty only extends when the records are believed to be relevant. Here, because the Veteran indicates that he is in receipt of Social Security disability benefits and it is not clear for what disabilities, the potential relevancy of the SSA decision and the records it considered cannot be ignored. These records are necessary for review before a decision may be made regarding his claims. 

The Veteran has claimed that his claimed disorders are secondary to herbicide exposure and/or his service-connected PTSD. The provisions of 38 C.F.R. § 3.310 , permit service connection not only for disability caused by service- connected disability, but for the degree of disability resulting from aggravation to a nonservice-connected disability by a service-connected disability. 38 C.F.R. § 3.310 (2011). See also Allen v. Brown , 7 Vet. App. 439, 448 (1995). The Veteran should be fully notified of the laws and regulations pertinent to secondary service connection. 

Moreover, in determining whether the duty to assist requires that a VA medical examination be provided or medical opinion obtained with respect to a Veteran's claim for benefits, there are four factors for consideration. These four factors are: (1) whether there is competent evidence of a current disability or persistent or recurrent symptoms of a disability; (2) whether there is evidence establishing that an event, injury, or disease occurred in service, or evidence establishing certain diseases manifesting during an applicable presumption period; (3) whether there is an indication that the disability or symptoms may be associated with the Veteran's service or with another service-connected disability; and (4) whether there otherwise is sufficient competent medical evidence of record to make a decision on the claim. 3 8 U.S.C.A. § 5103A(d); 38 C.F.R. § 3.159(c)(4); McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

The duty to assist requires that the Veteran be provided a VA examination to include an opinion regarding the etiology of the Veteran's hypertension, mitral regurgitation and sleep apnea.

Finally, by rating decision of August 2011, service connection for ischemic heart disease/coronary artery disease was granted, due to Agent Orange exposure. It is not clear from the record whether this satisfies the Veteran's claim for service connection mitral regurgitation. This should also be clarified on remand to the RO. 


Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2011). Expedited handling is requested.)

1. Obtain a copy of the Social Security Administration decision that awarded the Veteran disability benefits. The records considered by the SSA in making its decision should also be secured. Any negative response should be included with the claims file. 

2. The Veteran should be provided the laws and regulations related to secondary service connection, as well as the type of evidence necessary to substantiate a claim for secondary service connection. 

3. The RO should clarify with the Veteran whether service connection granted ischemic heart disease/coronary artery disease, satisfies his claim for mitral regurgitation. 

4. The Veteran should be provided a VA examination for benign hypertrophy, hypertension, mitral regurgitation (an examination for this disorder should not be provided if the Veteran states that he is no longer applying for such benefit), and COPD. All indicated studies should be provided. The examiner should be asked if it is at least as likely as not (a 50 percent probability or greater) that the Veteran's claimed benign hypertrophy, hypertension, mitral regurgitation, and/or COPD is caused by herbicide exposure. 

b) The examiner should be asked whether it is at least as likely as not (a 50 percent probability or greater) that the Veteran's claimed hypertension, mitral regurgitation, and/or COPD are aggravated by the Veteran's service-connected PTSD. In other words, does the service-connected PTSD increase in severity such claimed disability beyond the natural progress of the disability. If it is determined that aggravation beyond the natural progress of the disorder exists, the examiner should be asked to identify the baseline level of severity of the disability prior to aggravation and the level of severity of the disability due to service connected aggravation. 

All findings and conclusions should be set forth in a legible report. A rationale should be given for any opinion rendered. If the examiner is unable to render an opinion without resorting to pure speculation, he/she should so state with supporting rationale. In so doing, the examiner shall explain whether the inability to provide a more definitive opinion is the result of a need for additional information or that he or she has exhausted the limits of current medical knowledge in providing an answer to that particular question(s). 

5. The Veteran should also be provided an appropriate VA examination for his sleep apnea. All indicated studies, to include a sleep study, should be provided. The examiner should be asked if it is at least as likely as not (a 50 percent probability or greater) that the Veteran's claimed sleep apnea is caused by his service-connected PTSD. 

b) If the above response is negative, the examiner should state whether it is at least as likely as not (a 50 percent probability or greater) that the Veteran's claimed sleep apnea is aggravated by the Veteran's service-connected PTSD. In other words, does the service-connected PTSD increase in severity such claimed disability beyond the natural progress of the disability. If it is determined that aggravation beyond the natural progress of the disorder exists, the examiner should be asked to identify the baseline level of severity of the disability prior to aggravation and the level of severity of disability due to service connected aggravation. 

All findings and conclusions should be set forth in a legible report. A rationale should be given for any opinion rendered. If the examiner is unable to render an opinion without resorting to pure speculation, he/she should so state with supporting rationale. In so doing, the examiner shall explain whether the inability to provide a more definitive opinion is the result of a need for additional information or that he or she has exhausted the limits of current medical knowledge in providing an answer to that particular question(s). 

6. After completing the above actions and any other development as may be indicated by any response received as a consequence of the actions taken in the preceding paragraphs, the Veteran's claims should be readjudicated. If any determination remains unfavorable to the Veteran, the Veteran and his attorney should then be issued a supplemental statement of the case. An appropriate period of time should be allowed for response. 


The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).




______________________________________________
K. OSBORNE
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs